113 So.2d 714 (1959)
L.R. FOULK, Appellant,
v.
FLORIDA REAL ESTATE COMMISSION, an agency of the State of Florida, Appellee.
No. 1034.
District Court of Appeal of Florida. Second District.
July 10, 1959.
Rehearing Denied August 4, 1959.
*715 Barnes & Wagner, Dade City, for appellant.
Benjamin T. Shuman, Orlando, for appellee.
KANNER, Judge.
The appellant, an appraiser, resident of Charlotte County, Florida, entered into a contract with the Board of County Commissioners of Pasco County to re-appraise, for a specified compensation, all of the real property within that county for purposes of tax roll preparation by its tax assessor for the fiscal year 1959-60. As the result of a suit brought by the appellee, Florida Real Estate Commission, appellant was enjoined by the tribunal below from performance of the contract. The basis for this holding was that appellant had not qualified under Chapter 475, Florida Statutes, F.S.A., the Real Estate License Law, which embraces appraising, and was thereby prohibited from doing the work called for under the contract. This appeal has been taken from the final decree so adjudicating.
It is well first to review pertinent sections of the contract under which appellant was employed by the Pasco County commissioners. The parties agreed as follows:
"Whereas, the said party of the second part is in the business of appraising and making the valuation of the various properties within a governmental unit for tax purposes and the said party of the first part desires a reappraisal of all of the property within Pasco County, Florida, to be made by the said party of the second part.
"* * * the said parties hereto do hereby covenant and agree to and with each other:
"1. That the said party of the first part does hereby employ and hire the said party of the second part as a contractor to revalue and appraise all of the taxable real property within Pasco County, Florida.
"2. That the said party of the second part may arrange for the setting up of his work schedule and all preliminary work connected therewith prior to January 1, 1959, but that the actual reappraising and value of said property within the said county shall begin on or promptly after January 1, 1959 and shall be completed in ample time to make such information available to the County Assessor of Taxes for Pasco County, to be used in the making up of his tax roll for the fiscal year 1959-60."
It is also provided that the party of the first part shall pay the party of the second part on the basis of unit appraisal under a schedule of $1.75 per unit for parcels of real property upon which there is no structure, $3 per unit for parcels where there is a structure or up to five structures subject to appraisement, and $4.25 per unit for all parcels upon which there are more than five buildings.
The contract further specifies:
"The said party of the second part shall render to the said party of the first part on or soon after the first day of each month a statement showing the number of taxable units of each of the three classes hereinabove set forth which have been appraised during the *716 preceding month and the said party of the first part shall thereupon pay to the said party of the second part, an amount equal to 75% of the amount accrued to the said party of the first part for such work completed in said month until such payments shall have reached Twenty Thousand Dollars ($20,000.00). That when the said work shall have been completed and the final report made thereon and the total amount extended that is to be paid for the said work by the said party of the first part to the said party of the second part, that the said party of the first part shall pay to the said party of the second part such amount as may be necessary to make the total payments to said date equal to Twenty Thousand Dollars ($20,000.00) and shall issue to the said party of the second part, its written obligation agreeing to pay the remaining amount of said balance to the party of the second part, the said payment to be made on or before January 1, 1960 together with interest thereon at the rate of six (6%) per cent per annum."
The resolution authorizing execution of the contract sets forth that L.R. Foulk "has made a proposition to this Board for the re-appraising and re-assessing of all the real property within Pasco County."
Appellant is here contending in essence that Chapter 475 does not apply to the work contemplated, but rather that section 193.111, Florida Statutes, F.S.A., furnishes the authority for the service to be performed without the necessity of his qualifying under Chapter 475. He insists that Chapter 475 neither contemplates nor indicates any legislative intent that a person who evaluates or appraises property for taxation purposes is required to qualify under its provisions. He also urges that the legislature, in enacting section 193.111, had it intended this section to operate under control of the older Chapter 475, would have articulated this requirement. The purpose of the enactment of Chapter 475, he says, is for the protection of the public against overreaching or fraudulent practices by persons in the making of real estate transactions and that such chapter does not prescribe any particular requirements or qualifications necessary for one to engage in the business of appraising.
We here point out that section 193.111 is simply an act authorizing boards of county commissioners in the various counties of the state to have appraisement of property within the counties made by some company or board of appraisers to be selected by the respective boards of county commissioners and to levy taxes and expend county funds for appraisement purposes.
The applicable provisions of subsection (2) of 475.01 may now be considered:
"Every person who shall, in this state, for another, and for a compensation or valuable consideration directly or indirectly paid or promised, expressly or impliedly, or with an intent to collect or receive a compensation or valuable consideration therefor, appraise, auction, sell, exchange, buy or rent, or offer, attempt or agree to appraise auction or negotiate the sale exchange, purchase or rental of any real property, or any interest in or concerning the same, including mineral rights or leases; or who shall advertise or hold out to the public by any oral or printed solicitation or representation that such person is engaged in the business of appraising, auctioning, buying, selling, exchanging, leasing or renting real estate, or interests therein, including mineral rights or leases, of others; and every person who shall take any part in the procuring of sellers, purchasers, lessors or lessees of the real property, or interests therein, including mineral rights or leases, of another; or who shall direct or assist in the procuring of prospects, or the negotiation or closing of any transaction which does, or is calculated to, *717 result in a sale, exchange, or leasing thereof, and who shall receive, expect, or be promised any compensation or valuable consideration, directly or indirectly therefor; and all persons who are members of partnerships or officers or directors of corporations engaged in performing any of the aforesaid acts or services; each and every such person shall be deemed and held to be a `real estate broker' or a `real estate salesman,' * * *" (Emphasis supplied.)
Then follow certain exceptions with which we are not concerned. The license law also prescribes the procedure which must be fulfilled in order that one may qualify to engage in the pursuits enumerated.
It is to be noted from the above language that although the designations are those of a "real estate broker" or a "real estate salesman," the definition of a person so engaged is broad and comprehensive, and this definition embraces one who for compensation appraises real property for another.
Without question appellant is in the business of appraising, and he is engaging in this field of operation as an independent contractor. A reading of the quoted provisions of the contract here involved indicates that the important and widespread effect of that undertaking touches all the real property owners of the county. The quoted excerpt from the resolution authorizing execution of the contract reveals that it was appellant who "made a proposition" to the board of county commissioners of Pasco County for re-appraising all the real property within that county.
As a business in this state, appraisement has become a very lucrative endeavor, requiring specialized training and knowledge. Not only do governmental units in the state at times employ an appraiser or appraisers to evaluate all the property within their boundaries, but multiple other appraisement contracts or engagements are entered into by individuals, institutions, and groups from time to time. The expert appraiser is no stranger to the courts of law, for suits involving federal, state, county, and municipal governments, as well as individuals, often look to the testimony of such a specialist to shed light on the solution of questions relating to evaluation of property.
The Florida legislature, in seeking to elevate the status of real estate brokers and the profession of real estate with all its related phases, under regulations designed for the protection of the public, through Chapter 475, Florida Statutes, F.S.A., has subjected this field of endeavor to requirements which must be met by those who engage in any of its defined activities. The Florida Supreme Court has recognized that the real estate business in this state has become highly specialized and that one who engages in this business belongs to a privileged class and enjoys a monopoly in that field. He is the confidant of the public in much the same manner as a lawyer or a banker. His relationship to the public exacts the highest degree of trust and confidence, and his status under the law is accompanied by recognized privileges and responsibilities. Ahern v. Florida Real Estate Commission ex rel. O'Kelly, 1942, 149 Fla. 706, 6 So.2d 857; Zichlin v. Dill, 1946, 157 Fla. 96, 25 So.2d 4; and Gabel v. Kilgore, 1946, 157 Fla. 420, 26 So.2d 166.
As one of the defined activities of a real estate broker or real estate salesman, appraisement is importantly a matter of public interest and welfare, constituting a field of endeavor which lends itself logically to the safeguards of regulatory measures. Subsection (2) of 475.01 brings the business of appraisement for another for compensation or valuable consideration within the operation of Chapter 475, establishes that business as a specialization within the real estate profession, and brings it under the regulatory control of the central authority under which the section is administered, the Florida Real Estate Commission. This subsection clearly states that the *718 definition of one who shall be deemed and held to be a real estate broker or a real estate salesman includes, with certain exceptions, every person who shall "appraise, * * * or offer, attempt or agree to appraise, * * * or who shall * * * hold out to the public by any oral or printed solicitation or representation that such person is engaged in the business of appraising," for compensation or valuable consideration.
Section 193.111 does not abridge Chapter 475; it only authorizes the county commissioners of the several counties of the state to employ a board or a company of appraisers of their choosing, levy taxes, and pay for appraisement services from county funds. Chapter 475 is independent of section 193.111 since it is a regulatory measure and prescribes requirements to be fulfilled by those who desire to engage in appraising or the other activities specified in such chapter.
The scope of this opinion is not intended to reach beyond the question presented through the particular factual situation here involved. We re-emphasize that the appellant, according to the recital of the resolution of the county commission authorizing the contract for his employment, and according to the contract itself, held himself out to be in the business of appraising and evaluating property and entered into this agreement as an independent contractor.
We therefore hold that the appellant is precluded under the provisions of the Real Estate License Law from performance of the service called for under his engagement with the Board of County Commissioners of Pasco County. Upon qualifying with the appellee commission, he may then apply to have the injunctive decree vacated.
Affirmed.
ALLEN, C.J., and STEPHENSON, GUNTER, Associate Judge, concur.