774 So.2d 900 (2001)
Atef I. MICHEL and Sophie T. Michel, Appellants/Cross-Appellees,
v.
BEAU RIVAGE BEACH RESORT, INC., Georges Chammah and Nohad Chammah, Appellees/Cross-Appellants,
v.
Artin Bastajian, and A.M.C.V. Corporation, a Florida corporation, Cross-Appellees.
Nos. 4D99-1398, 4D99-1448.
District Court of Appeal of Florida, Fourth District.
January 3, 2001.
*901 Peggy Fisher of Geller, Geller, Beskin, Shienvold, Fisher & Garfinkel, L.L.P., Hollywood, for appellants/cross-appellees.
David Hoines of Hoines & Rose, Fort Lauderdale, for Appellees/cross-appellants-Beau Rivage Beach Resort, Inc., Georges Chammah and Nohad Chammah.
Bruce L. Hollander of Bruce L. Hollander, P.A., Hollywood, for Cross appellees A.M.C.V. Corporation and Artin Bastajian.
STONE, J.
We partially reverse a summary final judgment in this foreclosure action involving three defaulted mortgages on a hotel. The judgment was entered on cross-motions for summary judgment.
Two of the mortgages, one for $100,000 and another for $172,000, were held by Atef and Sophie Michel (Michel), who sought to foreclose. Atef Michel was a real estate salesman who had taken the listing on the hotel from the seller, AMCV Corporation.
AMCV, through its owner Artin Bastajian, sold the hotel to the buyers, Georges and Nohad Chammah, who had been procured by Michel. Chammahs, through a corporation, Beau Rivage Resort, Inc., closed on the hotel purchase in December 1992. Three different notes with three different mortgages were executed at closing by the buyer, Beau Rivage and the Chammahs individually. Two notes and accompanying purchase money mortgages were initially executed in favor of the seller, AMCV; one in the amount of $500,000 and one in the amount of $172,000 (the $172,000 mortgage was subsequently assigned by AMCV to Michel). As to these two, we affirm the summary judgment of foreclosure.
Beau Rivage and the Chammahs executed the third note and mortgage in favor of the Michels in the amount of $100,000. We address only the issue as to this note and mortgage.
Beau Rivage and Chammah sought summary final judgment asserting that the note and mortgage to Michel was void because chapter 475, Florida Statutes, forbids the filing of a mortgage to enforce a real estate commission and because Michel, who was a salesman and not a broker, was ineligible to receive a real estate commission. The trial judge agreed, based on a statement in Michel's deposition, that the $100,000 mortgage was for the commission.
Bastajian had entered into a written agreement to pay Michel's broker a commission of $100,000 on the sale. Michel, with the written consent of his broker, Don Larson, used the proceeds of the $100,000 commission to fund a loan at closing to Chammah. In support of his summary judgment motion, Michel filed an affidavit stating that the $100,000 was a loan to enable the buyer to close. However, in Michel's deposition, he was asked whether the $100,000 mortgage on which he was suing was for his "commission," and he responded, "Yes, it is." Regardless, it is undisputed that the $100,000 commission *902 from the seller was the source of the funds used for the loan. The closing statement shows the $100,000 commission as a seller's expense. The buyer then received a credit of the $100,000 loan of those funds on the balance due at closing.
Section 475.42(1)(j), Florida Statutes, prohibits a real estate broker or salesman from placing a mortgage in the public records for the purpose of collecting a commission. See Llera Realty, Inc. v. Board of Real Estate, 385 So.2d 1131 (Fla. 3d DCA 1980). However, the last sentence of section 475.42(1)(j) provides that the broker is not "prohibit[ed] ... from placing a lien on a property where expressly permitted by contractual agreement." Here, Beau Rivage and Chammah agreed to Michel's mortgage lien as security for repayment of the $100,000 loan. Further, in this case, as in Santaniello v. Department of Professional Regulation/Board of Real Estate, 432 So.2d 82 (Fla. 2d DCA 1983), the salesman's action was not instituted to obtain a commission, but was completely unrelated to the brokerage business and, therefore, is not barred by section 475.42(1)(j).
The trial court misconstrued the statute as applying to Michel's note and mortgage. The record is clear and undisputed that the seller was obligated to pay the commission, that Michel's broker approved payment of the full commission to Michel, and that all interested parties authorized the loan by Michel to the buyer to use as part of the balance of cash due at closing. Further, when Michel made the funds available to the buyer, he was acting in his individual capacity, as it was his money to invest as he pleased. The circumstances here are completely unlike those in Lake Placid Holding Co. v. Paparone, 414 So.2d 564 (Fla. 2d DCA 1982), where an unauthorized claim of lien or lis pendens was filed by a real estate agent for the purpose of enforcing or coercing payment of an unpaid commission claim.
We have also considered the remaining issues addressed to affirmative defenses and counterclaims alleging civil conspiracy, negligent misrepresentation, civil theft, fraud, violation of fiduciary duties, mistake, impossibility of performance, failure of consideration, illegality, and public policy. As to these, the undisputed facts support the trial court findings of waiver. Therefore, we affirm the judgment of foreclosure, as to the $500,000 and $172,000 mortgages and, as to the $100,000 Michel mortgage, we reverse and remand for further proceedings.
GUNTHER and FARMER, JJ., concur.